UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EDWIN M. DEWITT,<br><br>    Plaintiff,<br><br>    v.<br><br>WALGREEN CO., an Illinois corporation d/b/a WALGREENS, and JOHN or JANE DOE I-V, unknown individuals,<br><br>    Defendants. | Case No. 4:11-cv-00263-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court is Plaintiff Edwin M. Dewitt's Motion to Compel (Dkt. 29). Defendant Walgreen Co. d/b/a Walgreens maintains that communications regarding the creation and revision of a corporate policy, as well as documents referencing those topics, are protected by the attorney-client privilege and work-product doctrine. The Court ordered an accelerated briefing schedule, with which the parties have complied. Having thoroughly reviewed the pleadings and being familiar with the record, the Court will grant in part and deny in part the Motion as more fully expressed below.

## BACKGROUND

Plaintiff Edwin Dewitt worked for Walgreens as the pharmacy manager of its Ontario, Oregon store. *DeWitt Dep.* 24:1-9, Ex. A to Warberg Decl., Dkt. 32-3. Dewitt follows Kriya Yoga, which teaches that harming another person will engender bad karma upon reincarnation. *Dewitt Dep.* 75:18-78:25.

In approximately August 2009, Walgreens charged Sherrise Trotz, Walgreens' Executive Pharmacy Director for Midwest Pharmacy Operations, with drafting a new Immunizer Policy requiring all Walgreens pharmacists to become certified immunizers. *Trotz Decl.* ¶ 2, Dkt. 32-1. According to Ms. Trotz, "the adoption and implementation of the Immunizer Policy was a top priority for Walgreens and was part of a larger initiative to transform Walgreens from an entity that customers viewed as a place to get their prescriptions filled, to a partner in their overall health care." *Id.*

Ms. Trotz worked primarily with Marty Szostak, a senior in-house attorney in Walgreens' Employee Relations department, on the drafting, revision and implementation of the Immunizer Policy.  *Id.* ¶ 3. Mr. Szostak and Ms. Trotz also worked with other lawyers in Employee Relations, the Vice President of Pharmacy Operations, five other corporate Vice Presidents, and the four other Executive Pharmacy Directors in formulating the policy.  *Id.*

The original policy became effective on September 1, 2010. *Id.* ¶ 4. Shortly after the original policy went into effect, Ms. Trotz began working with Mr. Szostak and the other corporate executives to revise the policy.  That revised policy became effective on

March 1, 2011. Mr. Szostak then revised the revised policy, which became effective on June 21, 2011. *Id.*

When Walgreens first implemented the policy in September 2010, Dewitt refused to become a certified immunizer. He claims that administering an immunization constitutes doing harm to that person, which his religion prohibits. *See Complaint*. Because Dewitt refused to become a certified immunizer, Walgreens demoted Dewitt from a full-time pharmacy manager to a floating pharmacist in December 2010. A month or so later, Dewitt quit working for Walgreens because, he says, he did not get enough hours as a floating pharmacist. After resigning, Dewitt filed this action against Walgreens, alleging discrimination based on religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. He alleges that Walgreens failed to accommodate his Kriya Yoga belief by demoting him to a floating pharmacist when he refused to become a certified immunizer.

On May 30, 2012, Dewitt served a Rule 30(b)(6) deposition notice on Walgreens. The Rule 30(b)(6) deposition notice requested that Walgreens designate and prepare a corporate representative to testify about:

1. the drafting of the immunizer policy and its exceptions, including possible exceptions that were considered but not included in the final policy; and

2. any exceptions and/or accommodations made under the immunizer policy company-wide.

In addition, the Rule 30(b)(6) deposition notice requested that Walgreens produce certain categories of documents at the deposition, including the following:

1. A copy of any and all drafts of the immunizer policy which were created as part of the drafting process.

2. A copy of any documents referencing, considering or discussing potential exceptions to the immunizer policy or analyzing potential exceptions to the immunizer policy.

Walgreens designated Ms. Trotz as the Walgreens representative. During the deposition, which took place in Illinois at Walgreens' corporate headquarters, Dewitt's counsel asked numerous questions about the creation and revision of the Immunizer Policy. Walgreens' counsel objected to those questions pursuant to the attorney-client privilege and work-product doctrine. Walgreens also refused to produce preliminary drafts of the Immunizer Policy and documents referencing exceptions to the policy, as requested in Dewitt's deposition notice. The parties now ask the Court to determine the validity of Walgreens' objections.

## DISCUSSION

### 1. Communications Regarding Immunizer Policy and Potential Exceptions

Walgreens seeks to protect Ms. Trotz's communications with in-house counsel, Mr. Szostak, about the development and drafting of the Immunizer Policy, as well as her communications with in-house counsel about exceptions or accommodations to the policy.

As the party asserting the privilege, the burden of proof rests squarely with Walgreens. *Weil v. Investment/Indicators Research & Management,* 647 F.2d 18, 25 (9th Cir.1981). The privilege protects communications between an attorney and her client

made in confidence for the purpose of securing legal advice from the lawyer. *U.S. v. Chen,* 99 F.3d 1495, 1501 (9th Cir.1996).

The privilege applies both to information that the client provides to the lawyer for purposes of obtaining legal advice, as well as to the advice the attorney furnishes to the client. To this end, the Supreme Court has explained that "the privilege exists to protect not only the giving of professional advice those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn,* 449 U.S. at 390. But the privilege only protects disclosure of communications; it does not protect disclosure of the underlying evidence. *Id.* at 395.

In formulating the scope of the privilege, the Court must focus on the primary purpose that justifies the privilege: People need lawyers to guide them through "thickets of complex [legal issues], and, to get useful advice, they have to be able to talk to their lawyers candidly without fear that what they say to their own lawyers will be transmitted to the [opposing parties]." *Chen*, 99 F.3d at 1499. Because the privilege impedes the truth-finding process and must be strictly construed, "the privilege should attach only where extending its protection would foster more forthright and complete communication between the attorney and her client *about the client's legal dilemma*." *United States v. ChevronTexaco Corp.*, 241 F.Supp.2d 1065, 1070 (N.D.Cal. 2002) (emphasis in the original).

In this case, Walgreens contends that in-house counsel was intimately involved in all aspects of drafting and revising the Immunizer Policy, and therefore all

communications concerning the drafting and revising of the policy, including consideration of potential exceptions, must be privileged. That a person is a lawyer, however, does not cloak everything she says or hears with the privilege. *Chen,* 99 F.3d at 1501. Indeed, communications between in-house counsel and corporate representatives, unlike those between a client and outside counsel, are not presumed to be made for the purpose of obtaining legal advice. *ChevronTexaco Corp.,* 241 F.Supp.2d at 1076. "Corporations may not conduct their business affairs in private simply by staffing a transaction with attorneys." *Id.* "Because in-house counsel may operate in a purely or primarily business capacity in connection with many corporate endeavors," Walgreens must make a "clear showing" that the "speaker" made the communications for the purpose of obtaining or providing legal advice – rather than business advice. *Id*.

Here, Walgreens has not shown that every communication Ms. Trotz had concerning the Immunizer Policy was for the purpose of obtaining legal advice. As discussed above, the mere fact that an attorney is in the room when business matters are discussed does not render the conversation privileged. *Chen*, 99 F.3d at 1501. Only the legal advice given by in-house counsel and the communications directed to in-house counsel for the purpose of obtaining legal advice are privileged. "Extending protection to communications primarily and sufficiently animated by some other purpose would not be necessary to encourage forthright disclosures by clients to lawyers—so such communications should not be privileged." *Id.* Therefore, any business concerns Walgreens personnel discussed, including with in-house counsel, are not privileged.

To better illustrate this distinction between potentially privileged and non-privileged communications, the Court offers a hypothetical conversation as it did in *Adams v. United States*, No. 4:03-cv-00049-BLW, 2008 WL 2704553, *3 (D.Idaho July 3, 2008). The team formulating the Immunizer Policy meets with in-house counsel present, and they discuss possible exceptions to the policy. During the meeting, the team discusses business-related reasons for allowing or rejecting the exceptions. They also discuss legal reasons for including a particular exception. The fact that the team discussed certain exceptions is not privileged. Also, the business-related reasons discussed are not privileged. In-house counsel's legal advice regarding a particular exception discussed is privileged

Using these hypothetical as guidelines, some permissible questions might include: What business and economic factors did Ms. Trotz discuss in formulating and revising the policy? What exceptions were discussed? What were the business and financial factors, if any, that Ms. Trotz and other corporate personnel considered in formulating the exceptions to the policy? Conversely, some impermissible questions or topics might include: What legal advice did counsel provide regarding a particular exception? What language did counsel recommend in drafting the policy?

In conclusion, the Court finds that (1) conversations between Walgreens personnel and in-house counsel for the purpose of obtaining legal advice are privileged; and (2) conversations among Walgreens personnel, including in-house counsel, regarding factual matters or business-related considerations in formulating and drafting the policy are not

MEMORANDUM DECISION & ORDER - 7

privileged. If Ms. Trotz, or another corporate designee, has information of the second, non-privileged nature, this information must be disclosed.

### 2. Drafts of Immunizer Policy and Documents Referencing Exceptions

Similar principles apply to DeWitt's document requests. The mere fact that in-counsel reviewed and revised a document does not necessarily make the documents privileged or protected by the work-product doctrine. At best, attorney involvement and the anticipation of attorney review for legal significance renders the documents requested by Dewitt dual purpose documents under *In re Grand Jury Subpoena*, 357 F.3d 900, 906 (9th Cir. 2004). The Court will consider first whether the documents are protected as work-product.

The work-product doctrine, as set forth in Rule 26(b)(3), protects "from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *In re Grand Jury Subpoena*, 357 F.3d at 906. The doctrine creates a "zone of privacy" in which the attorney is encouraged to write down her litigation theories and strategies without fear that her opponent will unfairly capitalize on her work and creativity. *Hickman v. Taylor*, 329 U.S. 495, 510–11 (1947). But the doctrine does not protect documents prepared "in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes." Fed.R.Civ.P. 26(b)(3) advisory committee note.

In *In re Grand Jury Subpoena,* the Ninth Circuit examined the applicability of the work-product doctrine to various documents prepared by an environmental consultant

**MEMORANDUM DECISION & ORDER - 8**

hired by an attorney, who was in turn retained by Ponderosa to advise and defend it in anticipated litigation with the government. *Id.* at 905. The consultant conducted an investigation to assist the attorney in preparing a legal defense after Ponderosa had been informed that it was under investigation by the EPA for unlawful transportation and disposal of hazardous substances. *Id.* Shortly thereafter, the information collected by the consultant was used to answer an EPA CERCLA Information Request, a reporting responsibility independent of the investigation and anticipated litigation. *Id.* at 905–06. Two years later, a grand jury investigating Ponderosa issued a subpoena to the consultant for the production of all records concerning the disposal of waste material by Ponderosa. *Id.* at 906. Ponderosa intervened and moved to quash the subpoena, contending that the documents were protected under the work-product doctrine. *Id.*

The Ninth Circuit noted that some of the documents sought pursuant to the subpoena had a dual purpose— *i.e.,* they were prepared in anticipation of litigation with the government *and* in compliance with the CERCLA Information Request. *Id.* at 907. However, they were prepared because of the anticipation of litigation: "[The attorney] hired [the consultant] because of Ponderosa's impending litigation and [the consultant] conducted his investigation because of that threat. The threat animated every document [the consultant] prepared, including the documents prepared to comply with the Information Request...." *Id.* at 908. It was the anticipation of litigation that prompted the consultant's work "in the first place." *Id.* at 909. Thus, the Ninth Circuit concluded that the documents at issue were entitled to work product protection because, "taking into

account the facts surrounding their creation, their litigation purpose so permeate[d] any non-litigation purpose that the two purposes [could not] be discretely separated from the factual nexus as a whole." *Id.* at 910.

### A. *Preliminary Drafts of Immunizer Policy and Revised Immunizer Policy*

Walgreens has refused to produce preliminary drafts of the Immunizer Policy, arguing that Mr. Szostak's drafts were prepared because of the prospect of litigation. The Court does not agree.

First, Walgreens has failed to show more than a remote possibility of litigation at the time the policy was drafted. Walgreens cites *Valve Corp. v. Sierra Entertainment Inc.*, 2004 WL 3780346, *4 (W.D. Wash December 6, 2004) for the proposition that the Ninth Circuit has adopted a "broad test for eligibility for work-product protection." *Def.'s Br.* at 5, Dkt. 37. The Court agrees with this general proposition. However, unlike in *Valve Corp.*, which involved documents prepared, in part, in anticipation of a *pending* litigation, in this case no litigation was pending, or even imminent, when the Immunizer Policy drafts were prepared. The work product rule does not come into play merely because there is a remote prospect of future litigation. *Fox v. California Sierra Fin. Servs.,* 120 F.R.D. 520, 524 (N.D.Cal. 1988). Here, the prospect of litigation was too remote for work product immunity to attach to the preliminary drafts.

Even assuming that litigation regarding the policy was more than remote, however, Walgreens has also failed to meet its burden of showing that the preliminary drafts were prepared *because of* the prospect of litigation. As noted above, at most, the

drafts served a dual-purpose, i.e., a business purpose and a legal purpose.  Given the dual purpose of the drafts of the Immunizer Policy, the question for the Court is whether, under the totality of the circumstances, it can be fairly said that the drafts were created *because* litigation was anticipated— *i.e.,* whether the drafts would not have been created in substantially similar form but for the need for legal advice or the prospect of litigation.

Unlike the investigation documents in *In re Grand Jury Subpoena,* the drafts of the Immunizer Policy were not prepared in the first place because of impending litigation or solely to obtain legal advice. The drafts were prepared in an effort by Walgreens to formulate a corporate policy being implemented for business reasons, i.e., "to transform Walgreens from an entity that customers viewed as primarily a place to get their prescriptions filled, to a partner in their overall health care." *Trotz Decl.* ¶ 2, Dkt. 32-1. Drafting corporate policies, even if performed by an attorney, is part of a company's ordinary course of business.  The drafts would have been created whether litigation had been anticipated or not.  *Cf. United States v. Adlman,* 134 F.3d 1194, 1204 (2d Cir. 1998) (asking whether document would have been prepared in ordinary course of restructuring or whether it would not have been prepared but for anticipation of litigation over the restructuring).

By serving an independent business purpose, the drafts stand in contrast to the investigatory documents at issue in *In re Grand Jury Subpoena.* The drafts are more akin to the accountant's records found not to be protected in *United States v. Frederick,* 182 F.3d 496 (7th Cir.1999), a case discussed by the Ninth Circuit in *In re Grand Jury*

*Subpoena.* In *Frederick,* the documents at issue were used in preparation of tax returns *and* for use in litigation. The Ninth Circuit explained that, in *Frederick,* "[a]lthough clients were under investigation, work product protection was ultimately inappropriate because tax return preparation is a readily separate purpose from litigation preparation...." *In re Grand Jury Subpoena,* 357 F.3d at 909. In the case at bar, the drafts of the Immunizer Policy has a readily separable purpose from litigation. At bottom, it cannot be fairly said that the drafts were created in the first place in anticipation of litigation and are therefore not work product.

      Such preliminary drafts may be protected by the attorney-client privilege, however. Preliminary drafts of corporate document are often protected by attorney-client privilege because they may reflect not only client confidences, but also legal advice and opinions of attorneys, all of which is protected by the attorney-client privilege. For example, if the drafts contain a notation from counsel directing corporate personnel to modify or omit language for legal reasons, that communication would be protected. Or if counsel makes revisions to the language for legal reasons, this would be a protected communication.

      On the other hand, if a particular draft just contains revisions or notations by a corporate employee concerning purely factual matters, this would not be privileged. Such a communication, consisting of factual information, would not call for a legal opinion or analysis. Another example of a non-privileged communication might be an employee's comment that a particular exception should not be included because it would

be too expensive. Of course, if in-house counsel responded that the exception must be included for legal reasons, this communication would be privileged. Thus, Walgreens should go through the drafts to determine whether they contain privileged communications with the guidelines set forth in this decision and redact any privileged information.

### B. *Documents Referencing, Discussing, or Analyzing Exceptions to the Policy*

Likewise, the limited work product immunity does not extend to documents referencing exceptions to the Immunizer Policy. The burden of proof rests with Walgreens, the party asserting the work product doctrine, to demonstrate that documents referencing potential exceptions were prepared in anticipation of litigation. *Landof,* 591 F.2d at 38. As already discussed, simply because in-house counsel drafts a document does not automatically make it work product; the document must be prepared because of an actual or impending litigation. *In re Grand Jury* Subpoena, 357 F.3d at 906. As with the preliminary drafts of the policy, Walgreens has not met this burden of showing any of the requested documents were prepared because of the prospect of an actual or impending litigation.

However, if a document referencing a potential exception contains legal advice or confidential communications to an attorney for the purpose of obtaining legal advice, those documents are privileged. As noted above, the Court does not believe which exceptions were considered is protected information. Yet, the Court can certainly envision an email or memorandum from counsel advising Walgreens personnel on the

legal justifications for allowing or omitting a certain exception. A document such as this would be privileged; but one discussing purely business concerns relating to a particular exception would not.

## ORDER

In accordance with the Memorandum Decision set forth above,

IT IS HEREBY ORDERED that Plaintiff Edwin M. Dewitt's Motion to Compel (Dkt. 29) is GRANTED in part and DENIED in part.

IT IS FURTHER ORDERED that Walgreens' corporate designee must respond to questions about the formulation and revision of the Immunizer Policy that involve factual matters or business-related communications or considerations. Walgreens must also review drafts of the Immunizer Policy and documents referencing exceptions to the policy to determine whether they contain attorney-client communications in light of the parameters set forth in this decision. If such document contains privileged attorney-client communications and non-privileged information, Walgreens shall produce redacted copies of such documents.

DATED: September 4, 2012

B. Lynn Winmill
Chief Judge
United States District Court